**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

JOE HAND PROMOTIONS, INC.,

                                        Plaintiff,                    **REPORT AND**
                                                                      **RECOMMENDATION**

                -against-
                                                                      **19-CV-3391 (LDH)**
IMAD A. SKAF, et al.,

                                        Defendants.

-------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

        Joe Hand Promotions, Inc. ("plaintiff") commenced this action against Imad A. Skaf

("Skaf"), individually and as officer, director, shareholder and/or principal of Tarboosh

Restaurant Inc., d/b/a Tarboosh, as well as against Tarboosh Restaurant Inc., d/b/a Tarboosh

("Tarboosh") (collectively, "defendants"), charging both with violations of the Communications

Act of 1934, 47 U.S.C. §§ 553 and 605 et seq., and of the Copyright Act, 17 U.S.C. § 101 et seq.

See generally Amended Complaint (July 16, 2019) ("Am. Compl."), Electronic Case Filing

("ECF") Docket Entry ("DE") #12.[1]

        Plaintiff's Amended Complaint alleges that on December 1, 2018, defendants illegally

intercepted plaintiff's scrambled satellite transmission of the "Wilder v. Fury [Boxing] Match"

(the "Event") and exhibited it for their own commercial advantage or private financial gain.   See

id. ¶¶ 6, 23.   Although properly served, see Summons Returned Executed (June 21, 2019), DE

---

[1] Plaintiff's original pleading named Mahmoud Said Hassan Elgazzar ("Elgazzar") as a defendant, see
Complaint (June 7, 2019), DE #1, although plaintiff thereafter filed a notice of partial dismissal as to that
defendant on July 16, 2019, see Notice of Partial Dismissal (July 16, 2019), DE #10.   With leave of this
Court, plaintiff filed its Amended Complaint that same day, naming a new defendant, Imad A. Skaf.   See
Order Granting Motion to Amend (July 16, 2019); see also Am. Compl.

#8; Summons Returned Executed (Aug. 20, 2019), DE #14, defendants never answered or otherwise appeared in this action and, on October 16, 2019, their default was noted, see Clerk's Entry of Default (Oct. 16, 2019), DE #20.   On November 14, 2019, plaintiff filed a Motion for Default Judgment against both defendants, see Motion for Default Judgment (November 14, 2019) ("Pl. Mot."), DE #21, which the Honorable LaShann DeArcy Hall referred to the undersigned magistrate judge on December 4, 2019, for a Report and Recommendation, see Order Referring Motion (Dec. 4, 2019).

For the reasons that follow, this Court recommends that plaintiff be awarded damages in the amount of $1,450.00 for its Communications Act claims, $1,500.00 for its Copyright Act claim, $1,096.00 in attorneys' fees, litigation costs in the amount of $400.00, and post-judgment interest, against defendant Tarboosh, but that plaintiff's request for relief against defendant Skaf be denied, and that the claims against him be dismissed with prejudice.

## BACKGROUND

According to plaintiff's uncontested factual assertions, plaintiff is a Pennsylvania corporation that was granted the exclusive rights of distribution and public performance of the Event within commercial establishments.   See Am. Compl. ¶¶ 5-6.   Plaintiff then entered into licensing agreements with various entities in the State of New York by which plaintiff allowed these entities to publicly exhibit the Event to their patrons within their commercial establishments.   See id. ¶ 20; see also List of Broadcast Locations (Nov. 14, 2019), DE #21-5 (Ex. B) (reproduced at ECF pp. 2-5).   The transmission of the Event was scrambled and unavailable to the general public without payment of the appropriate fees; with payment, plaintiff authorized and allowed customers to decrypt, unscramble, and receive the closed circuit,

"IPTV," cable or satellite broadcast.   See Am. Compl. ¶¶ 19-22.[2]

Plaintiff alleges that Tarboosh is a business entity, the exact nature of which is unknown, located at 7222 5th Avenue, Brooklyn, New York 11209.   See id. ¶ 16.   Plaintiff also pleads that Skaf, who resides in New York, had the supervisory capacity and control over the activities occurring within the establishment on December 1, 2018.   See id. ¶¶ 7, 9.   Plaintiff proffers three affidavits from its investigator, or "auditor," Cosmo Lubrano, attesting to an unauthorized screening of the Event at Tarboosh on December 1, 2018.   See Site Inspection Affidavit of Cosmo Lubrano (Nov. 14, 2019) ("Lubrano Aff."), DE #21-5 (Ex. C) (reproduced at ECF pp. 6-7); Supplemental Affidavit (Nov. 14, 2019), DE #21-5 (Ex. C) (reproduced at ECF p. 8); Supplemental Affidavit of Cosmo Lubrano (Feb. 25, 2020) ("Lubrano Supp. Aff."), DE #29-1.[3] According to Lubrano's initial site inspection affidavit, he entered Tarboosh on the night of December 1, 2018 at approximately 10:07 p.m.   Lubrano Aff. at ECF p. 6.   While there, he observed a "[d]im[ly] lit [h]ookah [l]ounge and [c]afe" with "[s]eating [on the] right and left" and "1 tv set up for patron viewing" that was "at [the] rear facing [the] front" of the establishment and was "broadcasting the fight."   Id. at ECF p. 7.   While on the premises, he

---

[2] The Amended Complaint explains that the Event was available for "private, non-commercial, viewing" and that an individual purchaser "would be provided with terms of service which specifically provide for non-commercial, personal use only."   Am. Compl. ¶ 22 (emphasis omitted).

[3] As part of its motion for default judgment, plaintiff submitted two affidavits from the auditor, one describing his site inspection and the other referencing a video and/or still photographs taken by him. See DE #21-5 (Ex. C) (reproduced at ECF pp. 6-8).   In an Electronic Order entered on February 20, 2020, after noting that the latter affidavit "appears to be signed and dated October 21, 2019 [but] was notarized on March 21, 2019[,]" the Court ordered plaintiff to provide an updated affidavit from Lubrano and to explain why the prior affidavit appears to have been notarized seven months before Lubrano signed the document, see Electronic Order (Feb. 20, 2020).   On February 25, 2020, plaintiff filed yet another affidavit from Lubrano, dated February 24, 2020, reincorporating the contents of Lubrano's site inspection affidavit and explaining that Lubrano inadvertently dated the accompanying supplemental affidavit October 21, 2019, rather than March 21, 2019, when it was actually executed.   See Lubrano Supp. Aff. ¶¶ 1, 9.

saw on the television screen the sixth round of the match between the undercard fighters Ortiz and Kauffman, or, according to his perfunctory description, "[f]ighters fighting." Id. at ECF p. 6. Lubrano does not state the number of people he saw in the establishment, and, while he claims to have been unable to view the fire code occupancy notice, he checked a box that estimated the capacity of the establishment to be no more than 100 people. See id. at ECF p. 6. Lubrano did not pay a cover charge to enter Tarboosh, and his affidavit does not state whether he purchased any food or drink while there. See id. at ECF pp. 6-7. Nor does Lubrabo address whether he observed any employees, such as Skaf, in the establishment, although he avers that a Middle Eastern male with black hair asked him to leave the premises. Id. at ECF p. 6.

Lubrano's most recent affidavit, dated February 24, 2020, avers that he conducted a site inspection on December 1, 2018, and recorded his observations in a site inspection video. See Lubrano Supp. Aff. Submitted with plaintiff's motion papers are somewhat blurry photographs from the night the Event was broadcast. See Lubrano Photos (Nov. 14, 2019), DE #21-5 (Ex. D) at ECF pp. 9-12. The first two photographs appear to show the outside of the establishment, which has glass windows covered in window paint as well as a black awning with lettering spelling "Tarboosh." See id. at ECF pp. 9-10. The third and fourth photographs, which appear to be identical, show a portion of the inside of the establishment, including a wall-mounted television displaying a boxing match. See id. at ECF pp. 11-12. This Court has also been provided with a video approximately one minute in length, purportedly taken by Lubrano on December 1, 2018, see Lubrano Supp. Aff., which seems to verify some of the information set forth in Lubrano's initial affidavit, see Video (Feb. 20, 2020), DE #26 (CD-ROM submitted with cover letter). The video, which lacks sound, appears to be the source from which the photos

4

were generated.  See id.  The blurry video shows a television inside the establishment

displaying approximately two seconds of a boxing match between seemingly unidentifiable

fighters.  See id.  Present in the establishment are approximately a dozen individuals, some of

whom appear to be watching the Event.  See id.[4]

Plaintiff contends that defendants did not enter into a licensing agreement to publicly

exhibit the Event to their patrons on December 1, 2018, but rather, intercepted the transmission

and screened the Event for the purposes of direct or indirect commercial advantage or private

financial gain.  See Am. Compl. ¶¶ 23.[5]

## DISCUSSION

## I.    Default Judgment Standard

Following the Clerk's notation of a defendant's default, entry of a default judgment is

appropriate provided the pleading properly states a claim upon which relief can be granted.  See,

e.g., Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp.,

No. 08-CV-116 (FB)(JMA), 2009 WL 234348, at *1 (E.D.N.Y. Jan. 30, 2009).  If the

allegations sufficiently state a claim, the plaintiff must then establish damages.  See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  "A defendant's

default is an admission of all well-pleaded allegations in the complaint except those relating to

damages."  Axiom Plumbing, 2009 WL 234348, at *1 (citing Greyhound, 973 F.2d at 158).

---

[4] The video taken by Lubrano is inconsistent with portions of his initial affidavit.  For example, the video shows that Lubrano was on the premises for approximately one minute, not the four minutes that Lubrano attests to in that affidavit.  Compare Video with Lubrano Aff. at ECF p. 6.

[5] Plaintiff's Amended Complaint has two paragraphs numbered "23."  See Am. Compl. at ECF pp. 5-6. This Court refers to both paragraphs with the following citation "Am. Compl. ¶¶ 23."

## II.     Liability

### A.  Plaintiff's Claims Under the Communications Act

As a preliminary matter, although plaintiff's Amended Complaint alleges that defendants

violated both 47 U.S.C. §§ 605 and 553 of the Communications Act, and plaintiff seeks damages

under both, see Am. Compl. *ad damnum* clause ¶¶ (b), (d), "when a defendant's conduct has

violated both [s]ections 553 and 603, an aggrieved cable operator is entitled to only one, non-

duplicative recovery."   J & J Sports Prods., Inc. v. His & Hers Bar & Lounge, CV 17-4181

(ADS)(GRB), 2018 WL 4925706, at *3 (E.D.N.Y. Aug. 31, 2018) (quoting J & J Sports Prods.,

Inc. v. Alvarez, No. 07 Civ. 8852(RPP)(HBP), 2009 WL 3096074, at *4 (S.D.N.Y. Sept. 25,

2009)), adopted, 2018 WL 4922912 (E.D.N.Y. Oct. 9, 2018); see also Joe Hand Promotions, Inc.

v. Wall Street Rest., LLC, No. 14-CV-4267 (ENV)(RLM), 2015 WL 2084637, at *2 (E.D.N.Y.

May 4, 2015) (citing cases).   Thus, "where the defendant's liability can be established under

both sections, the Second Circuit has made clear that the court should award damages pursuant to

section 605."   His & Hers Bar, 2018 WL 4925706, at *3 (citing cases).

Accordingly, this Court must first address whether plaintiff's Amended Complaint states

a cause of action against defendants under 47 U.S.C. § 605(a).   Section 605 was enacted as part

of the Cable Communications Policy Act of 1984, which amended the Communications Act of

1934, 47 U.S.C. § 151 *et seq.*   Section 605(a) provides, in pertinent part, that:

> No person not being authorized by the sender shall intercept any radio communication
> and divulge or publish the . . . contents . . . of such intercepted communications to any
> person.

47 U.S.C. § 605.

Section 605(a) "has been held to apply to the interception of cable communications

originating as a satellite or radio transmission." J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc., 17 CV 2196 (ARR), 2018 WL 2078482, at *3 (E.D.N.Y. Feb. 27, 2018) (citing cases), adopted, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018). The Amended Complaint in this case alleges that the Event "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." Am. Compl. ¶ 19. Courts in this Circuit have held that where, as here, "at least part of the Event's transmission was accomplished by satellite, the defendants' interception of the Event violates [section] 605(a)." Alvarez, 2009 WL 3096074, at *4 (citations omitted); see also Garden City Boxing Club, Inc. v. Conway, No. 06 Civ. 3145(BSJ)(HBP), 2009 WL 125434, at *3 (S.D.N.Y. Jan. 20, 2009); cf. Cmty. Tel. Sys., Inc. v. Caruso, 284 F.3d 430, 434-35 (2d Cir. 2002) (noting disagreement with this view in two other Circuits). Because plaintiff's pleading alleges that defendants intercepted, received and/or de-scrambled the Event willfully and without authorization, see Am. Compl. ¶¶ 23; see also Plaintiff's Motion for Default Judgment with Supporting Memorandum of Law (Nov. 14, 2019) ("Pl. Mem.") at 2-3, DE #21-6, plaintiff adequately alleges a violation of section 605(a), and this Court need not evaluate plaintiff's claim under section 553.

## B. Plaintiff's Claim Under the Copyright Act

The allegations set forth in the Amended Complaint also state a valid claim for copyright infringement. Section 106 of the Act gives owners of a copyright the "exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]" 17 U.S.C. § 106; see also Premium Sports, Inc. v. Mendes, 17 CV 1309 (PKC)

(CLP), 2018 WL 2078488, at *4 (E.D.N.Y. Mar. 1, 2018) (citing the same), adopted, Order by

Pamela K. Chen Adopting Report and Recommendation (E.D.N.Y. Mar. 16, 2018). "Under the

Act, '[a]nyone who violates any of the exclusive rights of the copyright owner as provided by

section[s] 106 through 122 . . . is an infringer of the copyright or right of the author, as the case

may be." Mendes, 2018 WL 2078488, at *4 (citation omitted). A plaintiff must prove two

elements in order to establish copyright infringement: first, the ownership of a valid copyright,

and second, the copying of constituent elements of the work that are original. See Joe Hand

Promotions, Inc. v. Maupin, 2:15-cv-06355 (ADS)(AKT), 2018 WL 2417840, at *4 (E.D.N.Y.

May 25, 2018) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010)).

Here, the Amended Complaint alleges that plaintiff is the "copyright holder of the . . .

rights to the [Event], including the right of distribution as well as the licensing to commercial

establishments for the right to publicly exhibit the same[,]" Am. Compl. ¶ 37, and that without

"obtain[ing] the proper authority or license from [p]laintiff to publicly exhibit" the Event, id. ¶

38, defendants "publicly displayed the [Event]" on December 1, 2018, id. ¶ 39. In the default

judgment context, the Court accepts such allegations as true. See Joe Hand Promotions, Inc. v.

Levin, 18-CV-9389 (JPO), 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019). With respect to

the validity of the copyright, plaintiff has also presented a valid Certificate of Registration,

issued by the U.S. Copyright Office, bearing registration number PA 2-172-539 and listing an

effective date of registration as of February 7, 2019. See Certificate of Registration (Nov. 14,

2019), DE #21-7.[6] This Certificate of Registration constitutes prima facie evidence of the

---

[6] In response to an order of this Court, see Electronic Order (Feb. 19, 2020) ("2/19/20 Electronic Order"),
plaintiff has also proffered a contract, dated February 25, 2019, between plaintiff and Showtime Networks
Inc., the copyright claimant listed on the Certificate of Registration, see Agreement, DE #28. That
[footnote continues]

validity of the copyright and of the facts stated in the Certificate.   See Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 908 (2d Cir. 1980) (citing 17 U.S.C. § 410(c)).[7]

Regarding the originality element of copyright infringement, "when there exists prima facie validity of [p]laintiff's copyright, the burden of proof shifts to the [d]efendant to show [p]laintiff's work is not original."   Mendes, 2018 WL 2078488, at *5 (citation and internal quotation marks omitted).   In light of their default, defendants have not rebutted the presumption of validity that attaches with plaintiff's filing of a valid Certificate of Registration, nor have they shown that plaintiff's work is not original.   Therefore, based on the allegations set forth in the Amended Complaint, this Court concludes that plaintiff has established liability with respect to its copyright infringement claim.

### C.  Liability of the Corporate Defendant and Individual Defendant

#### 1.  Corporate Defendant

Plaintiff alleges that Tarboosh "is a domestic corporation that was formed and is licensed to do business in the State of New York" and has "its principal place of business at 7222 5th

---

agreement is signed, in pertinent part, by representatives of Showtime Networks Inc. and Joe Hand Promotions, Inc., and verifies that plaintiff has the right to enforce and initiate legal proceedings in plaintiff's name for copyright infringement or violations of the Communications Act.   See id. at 1; see also Julie Cohen Lonstein Affirmation (Feb. 25, 2020) ("Lonstein Aff.") ¶ 5, DE #27 (noting that the contract between Joe Hand Promotions, Inc. and Showtime Networks, Inc. "gave the [p]laintiff the exclusive right to commercial enforcement of piracy rights to the copyright.").

[7] According to the Copyright Act of 1976, a certificate of registration must be made "before or within five years after first publication of the [registered] work" in order to trigger the statutory presumption of validity.   See 17 U.S.C. § 410(c).   Here, the effective date of registration (February 7, 2019) postdates the date of Event by approximately two months (December 1, 2018).   Accordingly, the Certificate qualifies as prima facie evidence of the certificate holder's copyright ownership.
    That said, this presumption of validity is not irrebuttable; rather, "[t]he presentation of a certificate of registration by plaintiff merely 'shifts the burden of proof to [d]efendant[] to show the invalidity of [p]laintiff's copyrights.'"   Mendes, 2018 WL 2078488, at *5 (citations and internal quotation marks omitted).   Having defaulted, defendants have failed to rebut that presumption.

Avenue, Brooklyn, NY 11209." Am. Compl. ¶¶ 16-17. Courts may take judicial notice of entries in the New York State Department of State ("NYSDOS") Corporation and Business Entities Database in determining a corporate defendant's status and location. See J & J Sports Prods., Inc. v. Gomez, 18-cv-5199(KAM)(CLP), 2019 WL 4744229, at *5 (E.D.N.Y. Sept. 29, 2019) (citing cases). Here, the Court takes judicial notice of an entry in the NYSDOS Corporation and Business Entity Database that classifies "Tarboosh Restaurant Inc." as an active domestic business corporation, with documents first filed with the NYSDOS on December 23, 2016. See Corporation and Business Database, New York Department of State, Division of Corporations, http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (search "Tarboosh") (current as of March 17, 2020). The Court is therefore persuaded that Tarboosh is the proper corporate defendant.[8]

Further, courts in the Eastern District of New York have held that a plaintiff's "well-pleaded allegations state a valid claim against [an entity defendant] under § 605(a)" when, as is the case here, the plaintiff pleads that (1) the plaintiff holds an exclusive license to broadcast the Event at issue (see Am. Compl. ¶ 6); (2) the entity defendant had no right to commercially broadcast the transmission unless it contracted with the plaintiff through a licensing agreement (see id. ¶¶ 20-22); and (3) the entity defendant screened the program despite failing to contract

---

[8] The selected entity address information for Tarboosh Restaurant Inc. upon which the NY DOS effects corporate service is different from the address of the Establishment, and is as follows: Mahmoud Said Hassan Elgazzar, 3228 54th St., Woodside, New York, 11377. See Corporation and Business Database, New York Department of State, Division of Corporations, http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (search "Tarboosh") (current as of March 17, 2020). As previously noted, Elgazzar was named as a defendant in the original complaint but was voluntarily dismissed from the case. See supra p.1 n.1.

with the plaintiff for authority to do so (see id. ¶¶ 23). See, e.g., J & J Sports Prods., Inc. v. Inga, 18-CV-2542 (PKC) (RLM), 2019 WL 1320278, at *4 (E.D.N.Y. Mar. 22, 2019) (citing cases). Because plaintiff has sufficiently pled facts to state valid claims against Tarboosh, this Court respectfully recommends that the corporate defendant be held liable under section 605 of the Cable Communications Policy Act and under section 106 of the Copyright Act.

### 2. Individual Defendant

Without identifying the legal theory upon which it relies, plaintiff's Amended Complaint also seeks to hold individual defendant Skaf liable for violations of 47 U.S.C. §§ 553 and 605, as well as 17 U.S.C. § 504. See Am. Compl. ¶¶ 7-14. The Supreme Court has found that a "formulaic recitation of the elements of a cause of action" is insufficient to establish liability, even on default; rather, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," which requires that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted); see J & J Sports Prods., Inc. v. Paucar, 17 Civ. 055358 (RJD) (VMS), 2018 WL 4501057, at *6 (E.D.N.Y. July 16, 2018) (noting the application of Iqbal in a default judgment analysis), adopted, 2018 WL 4494874 (E.D.N.Y. Sept. 19, 2018). Here, while the Amended Complaint asserts that Skaf, as an "officer, director, shareholder and/or principal of [Tarboosh] . . . was the individual with supervisory capacity and control over the activities occurring within the Establishment on December 1, 2018[,]" Am. Compl. ¶¶ 8-9, plaintiff has proffered no factual basis to support that conclusory assertion.[9]

---

[9] This case thus stands in stark contrast to the facts in a case not even cited by plaintiff, J & J Sports

[footnote continues]

More specifically, plaintiff's allegation that Skaf had the ability to supervise the activities of Tarboosh "fail[s] to identify any actions the [i]ndividual [d]efendant[] took, and do[es] not permit the Court to infer that [defendant Skaf was] positioned to supervise the infringing broadcast, or directly participated in, authorized, or ha[d] knowledge of the violation."   J & J Sports Prods., Inc. v. Classico Bar Inc., 16-CV-5639 (ADS)(SIL), 2018 WL 2022166, at *3 (E.D.N.Y. Feb. 13, 2018) (citation and internal quotation marks omitted), adopted, 2018 WL 1168582 (E.D.N.Y. Mar. 6, 2018).   While the Amended Complaint states that Skaf "was the individual with close control over the internal operating procedures and employment practices" of the establishment and "was present at the [e]stablishment during the exhibition of the [Event]," Am. Compl. ¶¶ 11-12, neither the pleading nor plaintiff's motion papers support these conclusory allegations with additional facts to show that Skaf should be held liable for Tarboosh's allegedly illegal conduct.   See, e.g., Gomez, 2019 WL 4744229, at *6-7 (holding that a complaint with language similar to that in the case at hand did not plead sufficient facts to sustain a finding of individual liability); Inga, 2019 WL 1320278, at *5-6 (holding, in a case involving a complaint with factual allegations comparable to those in the instant case, that the allegations were insufficiently pled to establish liability on the part of the individual defendants); see also J & J Sports Prods., Inc. v. Emily Bar Rest. Inc., 15-CV-6499 (RJD), 2016 WL 6495366, at *2 & n.2 (E.D.N.Y. Sept. 27, 2016) (opining that the complaint was insufficiently

---

Prods., Inc. v. Ahuachapan Corp., – F.Supp.3d –, 2019 WL 1274693 (E.D.N.Y. Mar. 20, 2019); there, Judge LaShann DeArcy Hall entered a default judgment against the individual defendant, Esquival, noting, *inter alia*, that "state records list Esquival as [the defendant entity's] chief executive officer."   Id. at *3.   Here, in contrast, the NYSDOS Corporations and Business Entities Database does not list Skaf as a registered agent or otherwise reference him as somehow affiliated with Tarboosh.   See Corporation and Business Database, New York Department of State, Division of Corporations, https://appext20.dos.ny.gov/corp-public/CORPSEARCH.ENTITY_SEARCH_ENTRY (search "Tarboosh") (current as of March 17, 2020).

pled where the individual defendant's purported right and ability to supervise the infringing activities were based solely on her status as an officer, director, and principal of the establishment), adopted, 2016 WL 6495526 (E.D.N.Y. Nov. 2, 2016). Simply put, the weight of authority in this Circuit requires "more than a formulaic recitation that the individual defendants exercised control over the subject premises." Classico Bar, 2018 WL 1168582, at *3 (citing cases); J & J Sports Prods., Inc. v. Europe, 18-CV-5094 (MKB) (CLP), 2019 WL 4733582, at *4 (E.D.N.Y. Sept. 27, 2019) (declining to enter default judgment against individual defendant where the complaint "only provides conclusory, formulaic recitations of the elements of individual liability").

In any event, even if the Amended Complaint were deemed to sufficiently allege that Skaf had "supervisory capacity and control" over Tarboosh on the night in question, the pleading and plaintiff's other submissions fail to satisfy the second prong of the vicarious liability test – i.e., that Skaf had an "obvious and direct financial interest" in the infringement. See J & J Sports Prods., Inc. v. La Parranda Mexican Bar & Restaurante Co., Inc., 18-CV-2622 (NGG) (RLM), 2018 WL 6716095, at *3-4 (E.D.N.Y. Dec. 21, 2018); J & J Sports Prods., Inc. v. Mar Y Las Estrellas Rest. Corp., 17-CV-1190 (MKB) (ST), 2018 WL 4583489, at *4-5 (E.D.N.Y. Sept. 25, 2018) (holding that the plaintiff failed to provide sufficient allegations and evidence to warrant recovery against the individual defendant); accord Europe, 2019 WL 4733582, at *4 n.4; see also Classico Bar, 2018 WL 2022166, at *3 (finding plaintiff's complaint to be inadequate on similar grounds). As an initial matter, the pleading herein does not contain allegations of a cover charge or premium surcharge on food or beverages, nor does it specify whether Tarboosh sold food or drinks (alcoholic or non-alcoholic) during the hours in which the establishment

broadcast the Event.   See J & J Sports Prods., Inc. v. LX Food Grocery Inc., 15-CV-6506 (NGG) (PK), 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016) ("Plaintiff's auditor counted the number of patrons present during the Event . . . , but did not specify whether those patrons made any purchases.").   Nor does the record provide any basis to believe that Skaf was present during the unauthorized exhibition.   Cf. Joe Hand Promotions, Inc. v. Bernal, 18-CV-85 (ILG) (SJB), 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019) (finding that individual defendant, who "was present during the exhibition," authorized the interceptions).   Moreover, plaintiff has not established whether the individuals in the establishment at the time of the Event exceeded the number of patrons regularly present at Tarboosh.   See Classico Bar, 2018 WL 2022166, at *3 ("Plaintiff does not distinguish the presence of the twenty-five or so viewers from the regular presence of patrons at [the establishment] on a similar night").   As the Court is thus "unable to draw any inferences as to whether people present for the broadcast of the [fight] would be required or expected to make any purchases[,] . . . [p]laintiff has not satisfied its burden of showing the 'obvious and direct financial interest' required to establish vicarious liability" on Skaf's part.   LX Food Grocery, 2016 WL 6905946, at *3.

Accordingly, as plaintiff has not satisfied its burden to establish Skaf's contributory infringement or vicarious liability, this Court respectfully recommends that Skaf not be held individually liable and that the claims against him be dismissed.[10]

---

[10] In Mar Y Las Estrellas Restaurant, Judge Margo K. Brodie dismissed the Communications Act claims against the individual defendant but granted plaintiff leave to amend the complaint as to that defendant. See 2018 WL 4583489, at *5; cf. Europe, 2019 WL 4733582, at *4 (although refusing to enter default judgment against individual defendant, Judge Brodie declined to exercise her discretion to *sua sponte* vacate entry of default).   Here, having been put on notice of the inadequacy of its pleadings based on the myriad of cases in this District that address this issue (including Mar Y Las Estrellas and Europe), see *supra*, Part II.C.2, plaintiff should not be afforded an opportunity to cure the deficiencies of which it was

[footnote continues]

### III.    Damages

The Court next addresses the appropriate measure of damages to award plaintiff. Although a defendant, by defaulting, admits to all well-pleaded allegations pertaining to liability, the plaintiff nevertheless must provide evidence to substantiate its request for damages; it is within the Court's discretion to determine whether that burden has been met.    See, e.g., Greyhound, 973 F.2d at 158; Innovative Sports Mktg., Inc. v. Aquarius Fuente De Soda, No. 07-CV-2561 (ENV)(CLP), 2009 WL 3173968, at *6 (E.D.N.Y. Sept. 30, 2009).

### A.    Communications Act

### 1.    Statutory Damages

Plaintiff seeks to recover $10,000.00 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), see Pl. Mem. at 13, 23-24, which provides for awards ranging from $1,000.00 to $10,000.00, "as the court considers just."    47 U.S.C. § 605(e)(3)(C)(i)(II).    "When determining statutory damages under section 605, courts generally choose between two methods of calculations – a per-customer damage calculation or a flat-sum award."    Kingvision Pay-Per-View Ltd. v. Zalazar, 653 F.Supp.2d 335, 340 (S.D.N.Y. 2009).    The first approach involves a formula that multiplies a dollar amount per customer by the number of patrons alleged to be present during the unauthorized exhibition.    See id. at 340-41 (collecting cases awarding between $50.00 and $300.00 per patron).    On the other hand, "[t]he flat-sum approach is typically used when the exact number of patrons who observed the unauthorized programming is unknown."    Id. at 340.

---

or should have been aware.    See, e.g., J & J Sports Prods. v. Gonzalez, No. 18-CV-2319 (RRM) (RER), 2019 WL 3716197, at *7 (E.D.N.Y. May 9, 2019), adopted, 2019 WL 4888635 (E.D.N.Y. Sept. 30, 2019).

Courts using the per-customer formula often multiply the number of patrons by the residential (non-commercial) fee charged to view the program, in order to compensate the plaintiff for its presumed lost revenues. See generally id. at 341 (collecting cases). Here, however, the record is silent as to both the approximate number of patrons in the establishment on December 1, 2018, as well as the residential purchase price to view the Event, rendering the per-patron method inappropriate. See Bernal, 2019 WL 885930, at *4 (opining that the onus falls on the plaintiff to establish the actual fee for viewing the intercepted program if it wishes to pursue the per-patron damage calculation, and holding that, absent such a showing, the flat-fee method is the appropriate approach in awarding damages). The Court therefore applies the "flat-sum" approach in this case, and concludes that plaintiff is entitled to $1,450.00 in statutory damages, reflecting the amount that, according to plaintiff, Tarboosh (assuming a Fire Code Capacity of 1-100) would have been charged as a commercial licensing fee to broadcast the Event. See Rate Card (Nov. 14, 2019), DE #21-5 (Ex. A) at ECF p. 1.

In support of its demand for $10,000.00 in statutory damages, plaintiff cites to J & J Sports Prods., Inc. v. Welch, No. 10-CV-0159 (KAM), 2010 WL 4683744, at *5 (E.D.N.Y. Nov. 10, 2010), noting that Judge Kiyo Matsumoto "held [that] plaintiff is entitled to a further enhancement of the damages award because the record demonstrates that the defendants affirmatively and willfully intercepted the Event for financial gain, and that there is no way that the defendants could have inadvertently intercepted plaintiff's broadcast." Pl. Mem. at 12-13 (internal quotation marks and citation omitted); see id. at 15. The Welch opinion, however, is almost ten years old, and does not account for recent trends in the case law involving similar

facts.[11]   For instance, other courts in this District have not awarded statutory damages in excess of the amount of the commercial fee.   See Inga, 2019 WL 1320278, at *6 (declining to award the plaintiff $9,000.00, or three times the licensing fee); see also J & J Sports Prods., Inc. v. Dowling, 18-CV-5086 (MKB) (RML), 2019 WL 4727448, at *4 (E.D.N.Y. Sept. 27, 2019) (awarding $2,000.00 in statutory damages – the amount plaintiff would have received had defendant lawfully broadcast the program); J & J Sports Prods., Inc. v. Reynolds, 18-CV-2540 (FB) (ST), 2019 WL 1299408, at *3 & n.3 (E.D.N.Y. Jan. 11, 2019) (awarding $3,000.00 and declining to treble the commercial sublicense fee), adopted, 2019 WL 1299665 (E.D.N.Y. Mar. 21, 2019).

Accordingly, this Court respectfully recommends that the District Court award, pursuant to its discretionary authority, statutory damages totaling $1,450.00.

### 2. Enhanced Damages

Plaintiff also seeks to recover $20,000.00 in "enhanced damages" from Tarboosh under section 605(e)(3)(C)(ii), see Pl. Mem. at 13, 15, 23, 25, which permits the Court to increase an award by up to $100,000.00 "[i]n any case in which the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," 47 U.S.C. § 605(e)(3)(C)(ii).   A presumption of willfulness arises when a program is broadcast without authorization, as was the case here.   See J & J Sports Prods., Inc. v. Morocho, 18 CV 2303 (AMD)(RLM), 2019 WL 1339198, at *6 (E.D.N.Y. Feb. 27, 2019)

---

[11] Welch is also distinguishable on other grounds.   In that case, the investigator observed 85 individuals present at the establishment during the broadcast of the event.   See Welch, 2019 WL 4683744, at *1, *4. By contrast, the investigator's affidavit here does not state how many persons the investigator saw while he was briefly on the premises at Tarboosh, see Lubrano Aff. at ECF pp. 6-7, and the video taken during what appears to be a one-minute visit reflects only about a dozen persons in the establishment.

("The fact that [the defendant] broadcast the [p]rogram without authorization establishes the willfulness of its conduct."), <u>adopted</u>, 2019 WL 1333245 (E.D.N.Y. Mar. 25, 2019).   To determine whether enhanced damages are warranted, "courts have considered various factors, including 'repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the [program]; defendant's charging a cover charge or charging premiums for food and drinks.'" <u>J & J Sports Prods., Inc. v. Martinez</u>, No. 07-cv-3455-ENV-RER, 2009 WL 1913239, at *3 (E.D.N.Y. June 30, 2009) (citing <u>Kingvision Pay-Per View, Ltd. v. Recio</u>, No. 02 Civ. 6583(JSM)RLE, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003)); <u>see</u> <u>His & Hers Bar</u>, 2018 WL 4925706, at *8.

Here, the only evidence proffered by plaintiff with respect to these factors is that plaintiff would have charged Tarboosh a licensing fee for the right to exhibit the Event, and that Tarboosh could not have received the broadcast signal without actively attempting to circumvent the access restrictions imposed.   <u>See</u> Am. Compl. ¶¶ 20, 23.   In addition, based on the investigator's initial affidavit, it appears that Tarboosh imposed neither a cover charge nor a food and drink minimum, nor did it advertise the Event.   <u>See</u> Lubrano Aff. at ECF pp. 6-7.[12]

In similar circumstances, "judges in this district have taken varying approaches to the calculation of enhanced damages."   <u>His & Hers Bar</u>, 2018 WL 4925706, at *8 (citing <u>J & J Sports Prods., Inc. v. Morleys Tavern, Inc.</u>, No. 13 CV 5211(RRM), 2014 WL 4065096, at *8 (E.D.N.Y. May 9, 2014) (citing cases), <u>adopted</u>, 2014 WL 4075162 (E.D.N.Y. Aug. 15, 2014)).

---

[12] The video taken by Lubrano shows boxing-related window art on the front window of the establishment, but, as far as the Court can tell, the display does not appear to be advertising for the event, but rather, commemorates Muhammad Ali.   <u>See</u> Video.

While some courts have awarded no enhanced statutory damages, see, e.g., Mar Y Las Estrellas Rest., 2018 WL 4583489, at *7, others have included an amount "equal to the amount of actual damages, or even double or triple that amount[,]" His & Hers Bar, 2018 WL 4925706, at *8 (collecting cases).

Here, the record is devoid of any reason to believe that Tarboosh repeatedly violated the Communications Act, any evidence of actual damages, and any evidence that defendant received substantial unlawful monetary gains or advertised the Event. Plaintiff's investigator's site inspection affidavit also states he was not charged a cover to enter the establishment, see Lubrano Aff. at ECF p. 6, and plaintiff proffers no evidence of a premium for food or drinks. In addition, Tarboosh "appears to be a small business for which statutory damages will provide a sufficient penalty." Mar Y Las Estrellas Rest., 2018 WL 4583489, at *7; see Video.[13] As such, this Court does not recommend an award of enhanced statutory damages.[14]

---

[13] In the absence of a head count by the investigator, this Court draws the reasonable inference that there were few patrons in the Establishment during the broadcast of the Event. Here, this inference is supported by the 1:07 minute-long video submitted by plaintiff, which is shaky and fast-moving, making it impossible for this Court to count the precise number of the approximately one dozen patrons in Tarboosh. See Video.

[14] While Judge DeArcy Hall recently adopted, in part, a Report and Recommendation that awarded the plaintiff enhanced damages, which were calculated by trebling its actual (per-customer) damages, see Ahuachapan Corp., 2019 WL 1274693, at *10, the circumstances of that case (not cited by plaintiff) are materially different. As an initial matter, in contrast to the instant case, Ahuachapan Corp. did not involve a copyright claim and a separate award of statutory and enhanced damages under the Copyright Act. See infra pp. 20-22. Moreover, that case involved aggravating factors that are absent here. By way of example, in Ahuachapan Corp., the plaintiff alleged that 20-25 patrons viewed the event while purchasing food and drinks, and the space was "fairly busy." Id. at *3 ("Here, there was no cover charge, but the undisputed facts establish that the space was fairly busy . . . [and the establishment's] dining area contained approximately only 4 to 8 tables, and approximately 20 to 25 persons were watching the [e]vent and ordering food and drinks."). By contrast, the investigator in the instant action failed to state how many patrons he observed in the establishment during his visit, and the video and photographic evidence proffered by plaintiff suggest there were fewer patrons present than in Ahuachapan Corp. Likewise, this Court has no evidence that patrons were ordering food and drink or that Tarboosh was "fairly busy" when Lubrano visited the establishment.

**B. Copyright Act**

**1. Statutory and Enhanced Damages**

Turning to the proper measure of damages for the entity's violation of the Copyright Act, this Court respectfully recommends that plaintiff be awarded $1,500.00, consisting of $750.00 in statutory damages and $750.00 in enhanced damages.

Under the Copyright Act, a prevailing plaintiff may choose to recover (1) its actual damages or (2) statutory damages of between $750.00 and $30,000.00 per infringement, as the Court considers just. See 17 U.S.C. § 504(b), (c)(1). "[W]here the copyright owner sustains the burden of proving, and the court finds, that the infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). When determining whether an award is "just" pursuant to 17 U.S.C. § 504, courts consider factors including (a) "the expenses saved and profits reaped by the defendants in connection with the infringements," (b) "the revenues lost by plaintiff as a result of the defendants' conduct[,]" and (c) "the infringers' state of mind." Premium Sports, Inc. v. Nichols, 3:17-CV-0741 (GTS/DEP), 2018 WL 3574870, at *8 (N.D.N.Y. July 25, 2018) (citation omitted).

Here, plaintiff elects to recover statutory damages. See Am. Compl., *ad damnum* clause ¶ (f). Specifically, plaintiff asks this Court to award "statutory penalties in an amount, in the discretion of this Court, against [d]efendants, *jointly and severally*, of up [to] $30,000.00 pursuant to §504(c)(1)" and "enhanced damages in the amount of $150,000.00 pursuant to §504(c)(2) for their willful violation" of the statute. See id. (emphasis in original). While "[t]he award of statutory damages under the Communications Act does not preclude recovery

under the Copyright Act[,]" it is "the Court's obligation to enter an award that it 'considers just[,]'" and "district courts 'have broad discretion in setting the amount of statutory damages within the minimum and maximum amounts prescribed by the Copyright Act.'" Mendes, 2018 WL 2078488, at *10 (citations omitted).[15]

In the instant case, this Court concludes that awarding the full measure of damages sought by plaintiff would not be just. In fact, awarding $180,000.00 in damages would be "demonstrably excessive" in light of the $1,450.00 statutory damages award the Court recommended pursuant to the Communications Act, and given "the lack of allegations or evidence of 'substantial unlawful monetary gains by the defendants or . . . any significant actual damages to the plaintiff.'" Mendes, 2018 WL 2078488, at *10 (quoting HBO v. Champs of New Haven, Inc., 837 F.Supp. 480, 484 (D. Conn. 1993)). There appears to be no consensus among courts in this Circuit as to the amount to award for a willful violation of the Copyright Act when the plaintiff is to receive a parallel award under the Communications Act. See, e.g., Levin, 2019 WL 3050852, at *6 (reducing the plaintiff's requested statutory damages award of $35,000.00 by 80 percent); Mendes, 2018 WL 2078488, at *10 (reducing award of Copyright Act statutory damages from the demanded $15,000.00 to $1,000.00); Maupin, 2018 WL 2417840, at *9 (awarding $1,500.00 in statutory damages under the Copyright Act and another $1,500.00 for the defendants' willful behavior); Nichols, 2018 WL 3574870, at *8 (awarding $10,000.00 in

---

[15] "[A] plaintiff seeking compensation for the same injury under different legal theories is . . . only entitled to one recovery[,]" Levin, 2019 WL 3050852, at *5 (quoting Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH, 14-CV-585 (AJN), 2018 WL 4253181, at *16 (S.D.N.Y. Sept. 5, 2018)), although "that principle does not directly apply here, given that the Copyright Act and the Communications Act each 'vindicate [] separate rights, and courts have found it proper to award damages under both Acts[,]" id. at *6 (quoting Maupin, 2018 WL 2417840, at *8 (citing cases where courts have awarded damages under both Acts)).

statutory and enhanced damages under 17 U.S.C. § 504).   In the absence of any case law in plaintiff's memorandum of law addressing which approach the undersigned magistrate judge should utilize, the Court, in its discretion, recommends an award of $750.00 in statutory damages under section 504(c)(1), and an award of $750.00 under section 504(c)(2), based upon the corporate defendant's willful behavior.

### C. Fees and Costs

Section 605 also provides for the recovery of reasonable attorneys' fees and litigation costs.   See 47 U.S.C. § 605(e)(3)(B)(iii) (the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees[,] to an aggrieved party who prevails"); see also Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993).

Turning first to attorneys' fees, plaintiff seeks reimbursements totaling $1,096.00.   See Lonstein Costs & Fees Affidavit (Nov. 14, 2019) ("Lonstein Costs & Fees Aff.") ¶ 14, DE #21-2.   This is based on 2.6 hours of time, billed at $150.00 for a first-year associate who devoted 2.30 hours to the case, and $350.00 per hour for a partner who spent 0.30 hours on the case, along with 6.8 hours of paralegal time, billed at $95.00 per hour.   See id.   In support of its application, plaintiff has submitted detailed contemporaneous time records that show the discrete tasks completed by these individuals.   See id.   Although a 2019 decision in this District awarded the same plaintiff's counsel lower rates for partner and paralegal time charges, see Bernal, 2019 WL 885930, at *6 (reducing the hourly rates for Ms. Lonstein's firm to $300 for partner time and $90.00 for paralegal time), this Court concludes that, given the relatively modest increase in hourly rates *and* given the limited number of hours billed, the requested $1,096.00 in attorneys' fees is not unreasonable.

As to costs, plaintiff initially moved to recover a total of $1,802.50 in costs. See Lonstein Costs & Fees Aff. ¶ 13 (requesting $750.00 in auditing fees, $652.50 for service of process fees, and $400.00 in filing fees). However, in response to the Court's February 19, 2020 Electronic Order directing plaintiff to provide additional information regarding the amount of time necessary for the investigation, how much the investigators charged per hour, and why the investigators are qualified to demand the requested rate, see 2/19/20 Electronic Order (citation omitted), plaintiff informed the Court that it was "withdraw[ing] its request to recover [auditing fees] in the sum of $750.00[,]" see Lonstein Aff. ¶ 6.[16] Likewise, with respect to service of process fees, plaintiff withdrew "its request associated with process of service[,]" Lonstein Aff. ¶ 7, in response to this Court's February 19th Electronic Order, which noted that plaintiff failed to explain why the cost to serve two defendants totaled more than $600.00, see 2/19/20 Electronic Order (citation omitted). Therefore, this Court recommends no award of costs for auditing fees or service of process fees.

All that remains is plaintiff's request to recoup its filing fee. Because the docket establishes that plaintiff paid the $400.00 filing fee, the undersigned recommends that plaintiff be awarded this sum in costs. See Ahuachapan Corp., 2019 WL 1274693, at *10 (awarding an identical $400.00 filing fee based on a review of the docket sheet).

For the foregoing reasons, this Court recommends that plaintiff be awarded $1,096.00 in attorneys' fees and $400.00 in litigation costs.

---

[16] The Lonstein Affirmation erroneously states that plaintiff is withdrawing its request associated with "process of service[.]" Lonstein Aff. ¶ 6. Because (1) the heading of the section under which this language appears is called "Signal Auditing Invoice," and (2) plaintiff also withdraws its request associated with services of process fees in a later section of the Lonstein Affirmation, see id. ¶ 7, it is reasonable to infer that plaintiff meant to withdraw its request associated with its investigative fees.

**D. Interest**

Plaintiff also seeks "interest" as to its claims under the Communications Act and Copyright Act, <u>see</u> Am. Compl. *ad damnum* ¶¶ (c), (g). However, the pleading does not specify whether it is seeking pre-judgment or post-judgment interest, while plaintiff's supporting memorandum of law states only that plaintiff is entitled to post-judgment interest. <u>See</u> Pl. Mem. at 23. This Court recommends that plaintiff be awarded post-judgment interest but not pre-judgment interest.

Sections 605 and 504 do not provide for awards of pre-judgment interest, although courts have discretion to award such relief even absent explicit statutory authorization when doing so would be "fair, equitable and necessary to compensate the wronged party fully." <u>Aquarius Fuente De Soda</u>, 2009 WL 3173968, at *10 (Communications Act) (citation omitted); <u>see Capitol Records, Inc. v .MP3tunes, LLC</u>, 07cv9931, 2015 WL 13684546, at *4 (S.D.N.Y. Apr. 3, 2015) (Copyright Act) (collecting cases). That said, "[p]re-judgment interest is generally awarded only in 'exceptional cases[,]'" <u>Aquarius Fuente De Soda</u>, 2009 WL 3173968, at *10 (citation omitted); <u>see Capitol Records</u>, 2015 WL 13684546, at *4, and plaintiff adduces no evidence that this case is "exceptional" so as to warrant an award of pre-judgment interest, particularly on top of an award of enhanced damages under the Copyright Act.

Regarding post-judgment interest, plaintiff is entitled to such interest on damages from the date that a final judgment is entered until the date that defendant pays the judgment in full. <u>See</u> 28 U.S.C. § 1961(a). "Post-judgment interest accrues at the federal statutory rate until the judgment is paid." <u>Morocho</u>, 2019 WL 1339198, at *7 (citing 28 U.S.C. § 1961(a) and cases). This Court respectfully recommends that the District Court award plaintiff post-judgment

interest.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court grant in part and deny in part plaintiff's Motion for Default Judgment. Specifically, this Court recommends that default judgment be entered against defendant Tarboosh, and that plaintiff be awarded $2,950.00 in damages as set forth herein, $1,096.00 in attorneys' fees, $400.00 in costs, plus any post-judgment interest, but that default judgment as to defendant Skaf be denied and that the claims against him be dismissed with prejudice.

Any objections to the recommendations contained herein must be filed with Judge DeArcy Hall on or before **April 3, 2020**. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk is requested to enter this Report and Recommendation into the ECF system and to transmit copies by Federal Express to defendants at the following addresses:

Imad A. Skaf
420 Stobe Avenue
Staten Island, NY 10306

Tarboosh Restaurant Inc. d/b/a Tarboosh
7222 5th Avenue
Brooklyn, NY 11209

**SO ORDERED.**
**Dated:** **Brooklyn, New York**
**March 17, 2020**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

25